

Lathrop GPM LLP
lathropgpm.com

2345 Grand Boulevard, Suite 2200
Kansas City, MO 64108
Main: 816.292.2000

**Kate O'Hara Gasper**
Partner
kate.gasper@lathropgpm.com
816.460.5640

February 19, 2021

**VIA ECF Filing Only**

The Hon. Ona T. Wang
U.S. District Court
500 Pearl Street
New York, NY 10007

RE:   Case No. 20-cv-2859, *Allen, et al. v. Krucial Staffing*, LLC *et al.*

Dear Judge Wang:

We respectfully respond to the letter motion submitted by Plaintiffs on February 17, 2021 [ECF Doc. 91] regarding the parties' discovery dispute.

Mr. Antollino's correspondence, once again, contains antagonistic statements that are either false or misleading. Many of these statements, however, are wholly irrelevant to the pending discovery motion and we will not burden the Court with a rebuttal.

Additionally, Mr. Antollino did not comply with the Court's February 11, 2021 Order, which required him to limit his motion to Request Nos. 6, 7, 9, 11, 17, 19, 20, 22, 26, 28, 29, 37, 38, 42, and 43. Here, we respond only to Mr. Antollino's arguments regarding Request Nos. 7, 9, 11, 19, 28, 29, 37, 38, and 43, which were permitted by the Court's Order and included in the February 16, 2021 Letter Motion. To aid in the Court's review, we attach as **Exhibit A** an 8-page document that excerpts the relevant Requests, Objections, and segments from Plaintiffs' Letter Motion.

## Overview

Defendants appropriately objected to Plaintiffs' discovery requests when the imposed burden outweighed the potential benefit to meeting the discovery needs of the case. Defendants verified the imposed burden with a sworn declaration and, at the Court's request, provided a supplemental declaration with additional information. *See* **Exhibit B**. As explained below, the challenged discovery seeks information that is ultimately unimportant to resolving the issues in this case.

The fundamental problem with many of Plaintiffs' discovery requests is that they bear no reasonable relationship to the Plaintiffs' claims or Defendants' defenses. Instead, the requests pertain only to generalized grievances and unsupported allegations of wrongdoing, which do not align with Plaintiffs' causes of action. We provide the brief summaries below to assist the Court in "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* FRCP 26(b)(1).

The Hon. Ona T. Wang
February 19, 2021
Page 2

**Allegation Summary Relevant to the Scope of Discovery**

Defendant Krucial Staffing, LLC ("Krucial") is a disaster-relief staffing agency that provides supplemental staff in times of emergency. Plaintiffs are seven nurses who worked for Krucial very briefly in March or early April 2020. New York City Health + Hospitals ("NYCH&H") engaged Krucial to help respond to the City's initial COVID-19 outbreak during the global PPE shortage. Krucial, to fulfill this engagement, offered Registered Nurses ("RNs") approximately $10,000/week and Advanced Nurse Practitioners ("NPs") approximately $13,000/week for a 21-day assignment in New York.

The Plaintiffs came to New York to assist with the COVID-19 crisis. However, upon arrival, the Plaintiffs were dissatisfied with the various realities of working at a hospital during a once-in-a-lifetime pandemic. Most Plaintiffs were in New York less than one week and either left voluntarily or were asked to leave for refusing to work. This lawsuit followed, wherein Plaintiffs seek to recoup hazard pay they claim Krucial promised, which they did not stay to earn.

Krucial asked their RNs and NPs to assist in patient care to the best of their abilities, training and experience. Krucial and NYCH&H understood that many of the travel nurses were assigned to areas of the hospital that were not the nurses' typical area of specialty. Thus, the expectation was that these nurses would work within their scope of practice by performing basic nursing tasks and assisting more experienced healthcare workers wherever possible.

Plaintiffs Eaton and Torres refused to accept shift assignments that were outside their normal specialty and, as a result, were sent home or left voluntarily. Plaintiff Eaton was also unhappy with the CDC's new guidance regarding N95 masks, which limited the use of that mask to only certain procedures. Plaintiff Eaton claims Krucial CEO, Brian Cleary, defamed him by sending a mass-alert text message to all Krucial nurses regarding the refusal of "a rehab nurse," (i.e., not Mr. Eaton by name) refusing to accept an assignment in the Medical-Surgical Unit.

Plaintiffs Branch, Hickenbottom and Allen were NPs who claimed it was outside their scope of practice to perform work typically assigned to RNs, which requires less education and training than an NP. (Krucial paid NPs $13,000/week even if NPs worked RN shifts). Nevertheless, Plaintiffs Branch, Hickenbottom and Allen either left voluntarily or were sent home for refusing to accept work as RNs.

Plaintiff Burr was rejected by NYCH&H on his first day at the hospital and remained with Krucial as a logistical assistant. He was ultimately terminated by Krucial for unprofessional behavior. Namely, Mr. Burr solicited donations while using false information and generally made Krucial staffers feel uncomfortable. In this suit, he claims that disinfecting "foot scanners," which were donated for the use of Krucial nurses at the hotel, were stolen by Krucial when he was terminated. He also alleges a defamation claim against Mr. Cleary for the mass-alert text message sent to Krucial staffers, notifying them that Mr. Burr was terminated and asking for documentation regarding his "donation scams."

Plaintiff Pinlac does not allege that he was unqualified to work in the emergency department, but alleges that he was not provided with adequate PPE while working his one shift at NYCH&H. He was asked to return home after he exhibited behavior indicating that he was not emotionally fit to

The Hon. Ona T. Wang
February 19, 2021
Page 3

treat patients during the crisis. Specifically, he acted aggressively toward fellow staff members, locked himself in a hotel room, and frantically used Lysol to clean himself and his surroundings.

All Plaintiffs were paid for their time in New York, even though most of their time was spent waiting for NYCH&H to request staffing placements or in orientations. (Plaintiff Pinlac is the only one of the seven Plaintiffs who ever treated a patient in New York.) Krucial paid all the Plaintiffs "quarantine pay" to compensate them for the 14-days of quarantine that the CDC recommended for New York travelers at that time.

All told, Krucial paid Plaintiff Allen $22,048.62 for her one week in New York; Plaintiff Branch was paid $24,400.63; Plaintiff Burr was paid $22,407.16; Plaintiff Eaton was paid $25,027.20; and Plaintiff Hickenbottom was paid $22,052.62. Plaintiff Torres, who arrived in a later wave of nurses, was paid $10,319.30. Plaintiff Pinlac arrived last and stayed for one shift; Krucial will pay him $9,316 as soon as he completes his tax withholding paperwork, which he and his counsel still refuse to provide on principle.

Plaintiffs seek to recover in this lawsuit the alleged lost wages between the date of their termination and the time the short-term assignment ended, compensatory damages for emotional distress and pain and suffering, punitive damages, attorneys' fees, and costs. Plaintiff Burr also seeks to recover the cost of the foot scanners for which he did not pay, but solicited for donation.

### Plaintiffs' Causes of Action

Plaintiffs' Second Amended Complaint asserts nine causes of action: (1) Breach of Contract; (2) Quasi Contract – Reliance on a Promise; (3) New York Labor Law § 741 - Whistleblowing; (4) Breach of Contract Implied-in-Law; (5) Fraud; (6) Conversion; (7) Defamation; (8) Intentional Tort Causing Mental and Physical Pain and Suffering; and (9) New York Labor Law § 201 - Wage Theft. The fraud claim is based on Plaintiffs' allegations that Krucial represented that "plaintiffs would work in their field of expertise" and "would get proper PPE."

### Plaintiffs' Requests for Production of Documents

We respectfully ask the Court to review the breadth of Plaintiffs' requests and Defendants' detailed responses and objections, which are excerpted in full on Exhibit A. The burden imposed by each request is described in Brian Cleary's Supplemental Declaration, attached as Exhibit B. We briefly summarize the issues below and explain why additional discovery should not be compelled.

RFP 7 asked for all "communications with any media outlet concerning any news coverage of Krucial Staffing's deployment during the New York deployment." Again, the measurable burden imposed by this request is addressed separately in Mr. Cleary's attached Declaration. Mr. Antollino claims that Plaintiffs are entitled to discovery of these communications because Plaintiffs have alleged that Krucial is a "fraudulent organization." However, Plaintiffs' fraud allegations are in no way tied to any alleged representations attributed to Krucial in the news. Indeed, Plaintiffs applied for jobs with Krucial based on text messages sent by Krucial or by information shared by friends.

The Hon. Ona T. Wang
February 19, 2021
Page 4

RFP 9 asked "any and all" documents and communications exchanged between Krucial and City of New York, the Office of Emergency Management, or NYCH&H.  Defendants already produced Krucial's contracts with NYCH&H and all e-mails between Brian Cleary and representatives of New York City Office of Emergency Management, which was Krucial's initial contact for this engagement. The contracts disclose the amount payable to Krucial for its staffing services. Defendants already produced any responsive communications that related to PPE.  A wider scope of production, which would be extremely burdensome and expensive, would shed no light on whether Plaintiffs are entitled to the relief they seek in this lawsuit.

RFP 11 asked for "All emails between and among Steven Cooper of Pflugerville, Texas and Bryan Cleary or other Krucial management."  Mr. Cooper was a Krucial employee who briefly assisted with Krucial's administration of social media platforms.  Mr. Antollino claims Mr. Cooper's e-mails are relevant because Mr. Cooper "called me last summer and related the misdeeds Krucial was engaged in," and that this evidence will show "misinformation, eliminating useful information, or squelching discussion of improper patient care or nurse safety."  However, once again, none of the Plaintiffs based their fraud allegations or other claims on statements made by Krucial or third-parties on social media.  In any event, Krucial already produced all e-mails between Mr. Cooper and Mr. Cleary.  Further production is unwarranted.

RFP 19 asked for "Any documents concerning rules or procedures for testing employees for COVID-19," and Defendants responded that there were no responsive documents from the timeframe Plaintiffs were in New York; testing at that time could not be requested or obtained without a medical order, and was often unavailable even then.  Mr. Cleary's Supplemental Declaration explains the burden in producing responsive documents from irrelevant timeframes and Krucial's other deployment locations.

RFP 28 asked for "Documents concerning or relating to any nurse complaint about (a) lack of PPE; or (b) working outside of the scope of expertise, and RFP 29 asked for Krucial's responses to these complaints. Defendants previously produced all documents concerning any of the Plaintiffs' complaints regarding PPE or scope of practice, but objected to additional production relating to other incidents because the burden was too great.  As explained in Mr. Cleary's Supplemental Declaration, multiple Krucial employees worked day and night for weeks to assist nurses with obtaining PPE at NYCH&H (or removing them from the hospital if that was not possible), as well as attempting to fit nurses within staffing assignments where they could be most helpful.

RFP 37 asked for "Any documents maintained to keep Krucial's LLC form, including but not limited to such procedures outlined in Article 76 of Chapter 13 of the Kansas Corporation law." Defendants already produced Krucial's Articles of Organization, filed with the Kansas Secretary of State, and the Foreign Registrations filed with Texas and New York.  Defendants objected to the request for "documents maintained to keep Krucial's form" as vague, ambiguous and confusing.  Despite the meet and confer process, counsel is still unclear what Mr. Antollino wants to receive from this discovery request.  Additionally, although asked to provide this information, Mr. Antollino provided no legal authority suggesting that these corporate formation documents were relevant to his clients' claims or Krucial's defenses. The serpentine arguments raised in Mr. Antollino's Letter Motion are similarly unpersuasive. *See* Doc. 91, at p. 5 ("The written LLC documents . . . could lead to discoverable evidence. Brian Cleary, in my estimation, is a handsome

The Hon. Ona T. Wang
February 19, 2021
Page 5

spokesman for the LLC and nothing more. If the case goes to trial, he will get on the stand and give a lot of know-nothing sweet-talk.").

RFP 38 asked for "All communications among members about the finances of Krucial." As a preliminary matter, the members of Krucial Staffing LLC are entities and not individuals who can "communicate." Thus, from a technical standpoint, there are no responsive documents to produce or withhold. However, to the extent Plaintiffs' request encompassed communications among the individuals who directly or indirectly own those entities, Defendants appropriately objected to this overly broad request. The request also seeks highly confidential and sensitive information, which has no bearing on any of Plaintiffs' claims or Krucial's defenses. As indicated in Mr. Cleary's Supplemental Declaration, it would also be extremely burdensome to identify and produce all e-mails regarding Krucial's finances.

RFP 43 asked for "All written statements taken from witnesses to any occurrence alleged in the Complaint which are in your possession, custody or control." Defendants responded by indicating that they had already produced all documents specifically relating to Plaintiffs and "occurrences" alleged in the Complaint that might be construed as written statements. Defendants objected to the request to the extent it seeks disclosure of documents unrelated to any of the Plaintiffs because it seeks information that is not relevant to any party's claims or defenses. In his Letter Motion, Mr. Antollino argues: "Why would this not lead to discoverable evidence? It asks for witness statements as to plaintiffs' claims. The relevance is direct, and the objection as to an undefined proportionality is frivolous." However, this argument conveniently characterizes RFP 43 as a request for written statements as to "plaintiffs' claims" and not "any occurrence alleged in the [47-page] Complaint," of which there were many alleged occurrences that had nothing to do with Plaintiffs' claims. In any event, Defendants do not have any formal written witness statements to produce, and they appropriately objected to producing other informal documents or communications—unrelated to any of the Plaintiffs—that might be considered "written statements" by some.

## Conclusion

As indicated above and in Mr. Cleary's Supplemental Declaration, the burden and expense of the challenged discovery outweighs the potential benefit to adjudicating Plaintiffs' claims in this lawsuit. Simply stated, Plaintiffs' document requests are not focused on the important issues at stake in the action, but rather Mr. Antollino's generalized and unwarranted disparagement of Defendants. We respectfully ask the Court to deny Plaintiffs' requested discovery order.


Very truly yours,

*/s/ Kate O'Hara Gasper*

The Hon. Ona T. Wang
February 19, 2021
Page 6

Attachments:

    **Exhibit A** – Excerpts from Defendants' Responses and Objections to Plaintiffs' First Request for Production of Documents and Plaintiffs' February 17, 2021 Letter Motion
    **Exhibit B** – Supplemental Declaration of Brian Cleary

cc:    Gregory Antollino, Esq., counsel for Plaintiffs
       Michael Abrams, Esq., counsel for Defendants