**Excerpts from Defendants' Responses and Objections to
Plaintiffs' First Request for Production of Documents and
Plaintiffs' February 17, 2021 Letter Motion**

7.    Any communications with any media outlet concerning any news coverage of Krucial Staffing's deployment during the New York deployment.

RESPONSE:   Defendants object because the request does not seek documents that are relevant to any party's claims or defenses and the request is not proportional to the needs of the case. Plaintiffs cannot meet their burden of demonstrating relevance and proportionality. Defendants estimate, in good faith, that it would take approximately 10 hours of administrative labor to search for and produce potentially responsive documents. Documents are being withheld because it is unduly burdensome to collect and review potentially responsive communications.

LETTER MOTION: *Demand # 7 seeks information and correspondence with the many local media outlets about its New York deployment. Many of these were in response to the articles about this case in Mother Jones, ProPublica, and Business Insider. Each of these journalist enterprises found the case on the docket on its own. Krucial was able to get a jingoistic spot on "The Today Show" that it still brags about. About a month or two after that, I got a call from a person who sang Krucial's praises on that segment. I declined to add that person to the lawsuit because she followed the demagogue.*

*Nevertheless, the fact that Krucial arranged for such massive local media spots speaks to the fraud allegations. It admits to no wrongdoing whatsoever, yet I kept getting calls and emails all summer and into December that I could not ignore a group of plaintiffs who wanted to retain me for unpaid wages. Krucial promotes itself on media as a Heaven-sent savior. Yet so many former employees were aghast at its methods. Others held in their complaints because of the extremely high pay. These plaintiffs would not because they have ethical standards. Jalen Eaton was so demoralized by his termination for complaining about medical standards that he reconsidered whether he should be a nurse for some months. He lost so much self-esteem that he thought a way to get it back was to reapply to Krucial. Wrong move, but psychologically understandable. Brandon Burr was excoriated publicly despite procuring PPE and other items to assist nurses. His ability to procure supplies was an embarrassment to Cleary, and Cleary could not articulate why he fired Burr, even though Cleary publicly denounced him. Burr benefited the nurses at Krucial, but Cleary announced over his e-loudspeaker in Kansas that he was a scammer.*

*Krucial is, as plaintiffs have alleged, a fraudulent organization. It holds up two things that feed its belief that it is doing good for society: Bill de Blasio and "The Today Show." But as Peggy Lee wondered, "Is that all there is?" See also KHN.org, 11/24/20, "Need a COVID-19 Nurse? That'll Be $8,000 a Week?" (A nurse "remembers her employers telling her and her colleagues to "suck it up" as they*

**EXHIBIT A**

*struggled to care for six patients each and patched their protective gear with tape until it fully fell apart. The $800 or so a week she took home no longer felt worth it.") https://tinyurl.com/y9za3trk (quoting Cleary on how well Krucial did financially and quoting The Guardian, November 3, 2020, "Is This Worth My Life?" https://tinyurl.com/yxc71t2h.) As both articles explain, Krucial (and similar companies) lured workers from lower-paying jobs to "suck it up," or, as Cleary and his staff instructed, :" Get in there; they're probably going to die anyway!" Part of this fraud was to portray itself as sanctimonious, God-fearing do-gooders. But plaintiffs have a different story to tell, like the tiny "Who" crying out for Horton. Many of these companies — especially Krucial — harm society and do more harm than good. Especially Krucial because Cleary disclaimed at his deposition that he had any duty to the nurses other than to round them up, send them to New York to "get in there!" The marketing it did through local media as requested by demand # 7 is relevant in proving the Krucial's unapologetic fraud.*

9.    Any and all writings, communications, documents or other tangible items which were sent, given or otherwise provided by the Defendant to the City of New York. This demand includes:

   a.    Contracts between the City of New York and Krucial Staffing. The City of New York is defined as the municipal corporation, and any response may be limited to communications with the Mayor's Office; the Office of Emergency Management; the Department of Health and the Health and Hospitals Corporation (which is now known as NYC H & H).

   b.    Invoices and payments from the City of New York, including demands for any unpaid invoices, rejections of invoices, evidence of payments.

   c.    Any communications concerning plans or instructions to deploy nurses within the City Hospitals or other sites from the time of Krucial's retention by the City until the end of the deployment.

   d.    Any written documents (including emails and texts) among employees or management at Krucial about the operations of the City of New York – as defined above – during the New York deployment.

   e.    Any documents mentioning PPE, whether it includes a shortage of PPE, or an abundance, or its proper use.

RESPONSE:   **Defendants have produced Krucial's contracts with NYCH&H in Defendants' Initial Disclosures and will produce responsive e-mails between Brian Cleary and representatives of New York City Office of Emergency Management.**   Defendants object to any further production because the request does not seek documents that are relevant to any party's claims or defenses and the request is not proportional to the needs of the case.  Plaintiffs cannot meet their burden of demonstrating relevance and proportionality.  Defendants estimate, in good

2

faith, that it would take approximately 16 hours of administrative labor to search for and produce potentially responsive documents.  Documents are being withheld because it is unduly burdensome to collect and review potentially responsive documents. (emphasis added).

> LETTER MOTION: *Demand # 9 requests all communications between it and the City. This request goes to the heart of the case. The rules of engagement were perhaps undefined in this deployment. Something went awry. Again, at his deposition, Cleary tended to blame the mess on the ground on "the emergency." Yet Krucial raked in millions. Plaintiffs are entitled to all categories of information requested in the correspondence between Krucial and the City. How much Krucial made is relevant, minimally, to show that Krucial was undercapitalized, which might be the case. Otherwise, it had enough money such that it should and could have done a competent job in managing nurses. These nurses sacrificed and wanted to help in responding to COVID.*
>
> *At least two got COVID — one severely — because of a lack of PPE, no social distancing, no contract tracing, sporadic and inconsistent payment for quarantine. An organization that can respond to a pandemic must know about the pandemic. It did wrong, and it should not have promised PPE despite a shortage that the City knew about. The City stated this in its contract with Krucial — more or less. Krucial either did understand about the PPE poverty or conveniently denies it now. Most of these nurses would not have come if they had known of a PPE shortage. Krucial had the right to implead the City for these failures but did not. Thus, as the employer, it cannot deflect blame on the City or "the emergency" it was ill-equipped to respond to.*

11.    All emails between and among Steven Cooper of Pflugerville, Texas and Bryan Cleary or other Krucial management, including but limited to (a) his anticipated role in this litigation; or (b) Mr. Cooper's role as a Krucial worker in deleting negative comments – including but not limited to complaints about a lack of PPE – on Nursing Group chats. By "group chat" I mean an online forum, such as may exist on WhatsApp or Facebook, where multiple nurses communicated about the New York deployment.

RESPONSE:   **Defendants will produce all e-mails between Steven Cooper and Brian Cleary within Defendants' custody and control.** Defendants object to the request for communications with "Krucial management" because the request does not seek documents that are relevant to any party's claims or defenses and the request is not proportional to the needs of the case. Plaintiffs cannot meet their burden of demonstrating relevance and proportionality. Defendants estimate, in good faith, that it would take approximately 5 hours of administrative labor to search for and produce additional potentially responsive documents. Documents are being withheld because it is unduly burdensome to collect and review potentially responsive communications. (emphasis added).

> LETTER MOTION: *Demands ## 11 and 14 ask for emails or other correspondence between Krucial (including Cleary) and Matthew Cooper of*

3

*Pflugerville, Texas. Mr. Cooper was in New York monitoring social media and resolving tech issues. He called me last summer and related the misdeeds Krucial was engaged in. This demand calls for evidence that could be relevant for the reason set forth above — misinformation, eliminating useful information, or squelching discussion of improper patient care or nurse safety. The defendant does not deny these correspondences exist. The proportionality argument is laughable. Mr. Cooper is a third-party who can sustain allegations of fraud and nurse abuse.*

19.     Any documents concerning rules or procedures for testing employees for COVID-19, whether at the deployment or after the employee "demobilized" – voluntarily or involuntarily.

RESPONSE:   COVID-19 testing was not generally available during Plaintiffs' short time in New York and, if available, was limited to patients admitted to a hospital who exhibited COVID-19 symptoms. **There are no documents concerning rules or procedures for testing employees during the timeframe of Plaintiffs' employment because reliable testing for non-symptomatic employees was not an option. No documents from the relevant timeframe are being withheld.** Defendants object to production of potentially responsive documents that were created or used after the conclusion of Plaintiffs' employment for deployments outside of New York. Such documents are not relevant to any party's claims or defenses and the request is not proportional to the needs of the case. Plaintiffs cannot meet their burden of demonstrating relevance and proportionality. Defendants estimate, in good faith, that it would take approximately 15 hours of administrative labor to search for and produce potentially responsive documents. Documents are being withheld because it is unduly burdensome to collect and review potentially responsive documents. (emphasis added).

LETTER MOTION: *Demand # 19 requests information about COVID testing and contract tracing among Krucial Staff. Aimee Branch caught COVID from a co-worker in one of Krucial's cramped buses, and Krucial never told her that she should quarantine in New York and not expose her daughter to COVID, as she did. Going to the heart of the case, or at least one valve, this issue is relevant in defeating the defendant's contention of the Worker's Compensation bar. Yes, testing was sparse in comparison to now but is relevant. The idea that it is too burdensome to tender such information in a case where some plaintiffs caught COVID is intellectually dishonest, to put it mildly.*

28.     Documents concerning or relating to any nurse complaint about (a) lack of PPE; or (b) working outside of the scope of expertise.

RESPONSE:   NYCHH agreed to provide PPE and Krucial instructed its employees to report to Krucial any lack of PPE; numerous Krucial employees worked around the clock for weeks to respond to these reports. **Defendants previously produced all documents concerning any of the Plaintiffs' complaints regarding PPE or scope of practice.** Defendants object to additional production because the request seeks documents that are not relevant to any party's claims or defenses and the request is not proportional to the needs of the case. Plaintiffs cannot meet their burden of demonstrating relevance and proportionality. Defendants estimate, in good faith, that it

4

would take approximately 40 hours of administrative labor to search for and produce potentially responsive documents.  Documents are being withheld because it is unduly burdensome to collect and review potentially responsive documents that pertain to nurses other than Plaintiffs. (emphasis added).

> LETTER MOTION: *Demands 28, 29, and 30 seek information about breach of contract and fraud. Krucial dangled work as COVID swabbing as one potential deployment. It used that promise as an inducement, at least in part, to attract nurses. Plaintiffs — at least those who relied on the potential of swabbing — contend reasonably that this demand could lead to relevant evidence in proving fraud. If there were no swabbing jobs, why did Krucial float swabbing as a possibility? If there were swabbing sites, it goes to the question of differential treatment when several plaintiffs were fired for failure to "get in there" and do what would have cost them their licenses — or their lives.*

29.    Documents of Krucial's response to the complaints requested in ¶ 27, including but not limited to reassignment to a station where the nurse felt qualified to work, an attempt to procure PPE, or demobilization of the complaining employee.

RESPONSE:   NYCHH agreed to provide PPE and Krucial instructed its employees to report to Krucial any lack of PPE; numerous Krucial employees worked around the clock for weeks to respond to these reports.  Krucial employees also worked to assign or reassign shifts based on nurse preference or experience whenever possible.  **Defendants previously produced all documents concerning any of the Plaintiffs' complaints regarding PPE or scope of practice.** Defendants object to additional production because the request seeks documents that are not relevant to any party's claims or defenses and the request is not proportional to the needs of the case.  Plaintiffs cannot meet their burden of demonstrating relevance and proportionality. Defendants estimate, in good faith, that it would take approximately 40 hours of administrative labor to search for and produce potentially responsive documents.  Documents are being withheld because it is unduly burdensome to collect and review potentially responsive documents that pertain to nurses other than Plaintiffs. (emphasis added).

> LETTER MOTION: *Demands 28, 29, and 30 seek information about breach of contract and fraud. Krucial dangled work as COVID swabbing as one potential deployment. It used that promise as an inducement, at least in part, to attract nurses. Plaintiffs — at least those who relied on the potential of swabbing — contend reasonably that this demand could lead to relevant evidence in proving fraud. If there were no swabbing jobs, why did Krucial float swabbing as a possibility? If there were swabbing sites, it goes to the question of differential treatment when several plaintiffs were fired for failure to "get in there" and do what would have cost them their licenses — or their lives.*

37.    Any documents maintained to keep Krucial's LLC form, including but not limited to such procedures outlined in Article 76 of Chapter 13 of the Kansas Corporation law, including but not limited to

a.      Section 17-7668. Nature of business permitted; powers.

b.      17-7669. Business transactions of member or manager with the limited liability company.

c.      17-7670. Indemnification of officers.

d.      17-7672. Interpretation and enforcement of operating agreement.

e.      17-7673 The Articles of organization including a procedure for amendments together with any amendments.

f.      17-7686. Rules concerning Admission of members. 17-7687 Records of voting and meetings of members.

g.      17-7693. Management of limited liability company. (Which may be duplicative of the request for ownership interests, in which case please indicate that the earlier demand answers this question.

RESPONSE:  **Defendants will produce Krucial's Articles of Organization, filed with the Kansas Secretary of State, and the Foreign Registrations filed with Texas and New York.** Defendants object to the request for "documents maintained to keep Krucial's form" as vague, ambiguous and confusing.  Defendants object to the request because it seeks information that is not relevant to any party's claims or defenses and the request is not proportional to the needs of the case.  Plaintiffs cannot meet their burden of demonstrating relevance and proportionality. (emphasis added).

LETTER MOTION:  *Demand # 37 requests whether the LLC maintains proper corporatesque procedures. This information could allow plaintiffs to sue members, prove under-capitalization — or adequate capitalization, proving that it could have done a decent job during the deployment. Or it could lead to evidence that the LLC wilfully cheated the plaintiffs, knew there was a PPE shortage — potentially anything. Cleary was cagey, but if he didn't understand his ethical and legal responsibilities, then one of the members should. Cleary is not a member.*

*Further, a failure to follow proper corporate LCC procedures under Kansas law could reflect on Cleary's credibility or the LLC's incompetence to undertake this deployment. Any such records could lead to relevant evidence. I will limit this demand to anything leading up to June 30, 2020, approximately a month after the last plaintiff was fired. Kansas Corporation Law Article 76 requires, in various of its sections requires Limited Liability Companies, among other things, an operating agreement; the construction thereof; annual reports, etcetera.*

6

33842581v.1

*It is true that Kansas LLC law is favorable to the LLC, but the Kansas Supreme Court described its limitations in Iron Mound, LLC v. Nueterra Healthcare Management, LLC, 234 P.3d 39 (2010). This is not to say that Iron Mound has specific applicability to this case. But it allows a critique of the LLC just as the corporation, and any written documents, organizational documents, annual reports, etcetera. It should set out the LLC's division of responsibilities generally, in the pandemic or another disaster. Without the historical sense of how this LLC arose and how it sees its sense of LLC responsibility as a nurse-staffing agency, and perhaps it believes it has none. The LLC is a creature of the State of Kansas. It owes a duty to follow that State's rules given the benefits of the "corporate" form. The written LLC documents, including but not limited to the above suggestions, could lead to discoverable evidence. Brian Cleary, in my estimation, is a handsome spokesman for the LLC and nothing more. If the case goes to trial, he will get on the stand and give a lot of know-nothing sweet-talk. He was evasive at his deposition; though we used 7 hours, plaintiffs will need a few more, as presumably, we should have seven plaintiffs. He knew nothing about the LLC's operation, little about the pandemic, and repeatedly deflected blame on "the emergency," accepting no responsibility for managing nurses in the New York deployment. Plaintiffs deserve an opportunity to take a peek beyond the veneer and find out who made decisions within the LLC (whose members include three LLC's and one natural person). Brian Cleary knew very, very little.*

38.     All communications among members about the finances of Krucial.

RESPONSE:   Defendants object to the request because it seeks information that is not relevant to any party's claims or defenses and the request is not proportional to the needs of the case.  Plaintiffs cannot meet their burden of demonstrating relevance and proportionality.  The request also seeks highly confidential and sensitive information. **Additionally, the "members" of Krucial Staffing LLC are entities, rather than individuals, and thus not capable of communications.**  No documents will be produced in response to this request.  (emphasis added).

> LETTER MOTION: *Demand # 38 requests "All communications among members about the finances of Krucial." Number 39 requests "All communications among the LLC members about the New York deployment." My reasoning as to # 37 is the same as to ## 38 and 39.*

43.     All written statements taken from witnesses to any occurrence alleged in the Complaint which are in your possession, custody or control. If there are documents in another person's custody, please interpret this as an interrogatory limited to the name and last known address of such witness and statement.

RESPONSE:  **Defendants have already produced all documents specifically relating to Plaintiffs and "occurrences" alleged in the Complaint that might be construed as written statements.**  Defendants object to the request to the extent it seeks disclosure of documents unrelated to any of the Plaintiffs because it seeks information that is not relevant to any party's

33842581v.1

claims or defenses and the request is not proportional to the needs of the case.  Plaintiffs cannot meet their burden of demonstrating relevance and proportionality. (emphasis added).

> LETTER MOTION: *Demand 43 requests "All written statements taken from witnesses to any occurrence alleged in the Complaint which are in your possession, custody or control. If there are documents in another person's custody, please interpret this as an interrogatory limited to the name and last known address of such witness and statement." Why would this not lead to discoverable evidence? It asks for witness statements as to plaintiffs' claims. The relevance is direct, and the objection as to an undefined proportionality is frivolous.*