UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

Alexis Allen, et al.

           Plaintiffs,

v.

Krucial Staffing, et al.

           Defendants.
-----------------------------------------------------------------X

**SUPPLEMENTAL
DECLARATION OF BRIAN
CLEARY REGARDING
DISCOVERY MOTION**

20-CV-2859 (JGK) (OTW)

I, Brian M. Cleary, state as follows:

1.     I am the Chief Executive Officer of Krucial Staffing, LLC ("Krucial").

2.     On November 23, 2020, Defendants responded and objected to Plaintiffs' First Request for Production.

3.     Defendants provided good faith estimates of the amount of time it would take Defendants to identify and produce the requested documents.

4.     These estimates were provided either by me or, at my direction, staff members who are more familiar with the type and amount of documentation requested.

5.     Estimates were created based on the amount of documentation at issue, the organization thereof, and anticipated issues with identifying or collecting requested information.

6.     I verified these estimates in my first Declaration.

7.     The Court's February 11, 2021 Order asked Defendants to provide the basis for this hour estimation, the format and volume of the withheld documents, and any additional burdens (other than hours) posed by each request. Accordingly, Krucial provides the following information:

8.     RFP No. 7 requested "Any communications with any media outlet concerning any news coverage of Krucial Staffing's deployment during the New York deployment."

9.     Defendants estimated that it would take 10 hours of administrative labor to identify these e-mails because Krucial received dozens or maybe hundreds of inquiries for media responses in March - April 2020. Many of our nurses' local news stations ran stories about a nurse volunteering to travel and help in New York, and would contact Krucial as part of their story. At least one person's fulltime job was to respond to media inquiries in this timeframe and it would take a significant amount of work to sift through those e-mails for responsive documents. Krucial

33844231v.1

EXHIBIT B

hired an independent contractor to assist with media responses and Krucial would need to pay him for his time to review and produce his communications for this litigation.

10.    RFP No. 8 sought "Any and all writings, communications, documents or other tangible items which were sent, given or otherwise provided by the Defendant to the City of New York." This demand included: "a.    Contracts between the City of New York and Krucial Staffing. The City of New York is defined as the municipal corporation, and any response may be limited to communications with the Mayor's Office; the Office of Emergency Management; the Department of Health and the Health and Hospitals Corporation (which is now known as NYC H & H); (b) Invoices and payments from the City of New York, including demands for any unpaid invoices, rejections of invoices, evidence of payments.; (c) Any communications concerning plans or instructions to deploy nurses within the City Hospitals or other sites from the time of Krucial's retention by the City until the end of the deployment.; (d) Any written documents (including emails and texts) among employees or management at Krucial about the operations of the City of New York – as defined above – during the New York deployment.; and (e) Any documents mentioning PPE, whether it includes a shortage of PPE, or an abundance, or its proper use.

11.    Defendants already produced Krucial's contracts with NYCH&H in responsive e-mails between me and representatives of New York City Office of Emergency Management. Defendants estimated that it would take approximately 16 hours of administrative labor to search for and produce potentially responsive documents because many of these e-mails were sent and received by Krucial's outside corporate counsel that is a different firm Krucial's litigation counsel. Krucial would need to pay these attorneys to review and produce their responsive e-mails. Additionally, Krucial's requesting and processing payment under the contracts was a drawn-out process that, again, involved the fulltime attention of multiple Krucial employees and attorneys over many months.

12.    RFP 11 asked for "All emails between and among Steven Cooper of Pflugerville, Texas and Bryan Cleary or other Krucial management, including but limited to (a) his anticipated role in this litigation; or (b) Mr. Cooper's role as a Krucial worker in deleting negative comments – including but not limited to complaints about a lack of PPE – on Nursing Group chats. By "group chat" I mean an online forum, such as may exist on WhatsApp or Facebook, where multiple nurses communicated about the New York deployment."

13.    Defendants already produced all e-mails between Steven Cooper and me. Defendants estimated that it would take approximately 5 hours of administrative labor to search for and produce additional potentially responsive because the request did not identify who Plaintiffs considered "Krucial management." The person who worked most closely with Mr. Cooper is no longer employed by Krucial and, thus, we cannot ask where to look for responsive documents and the custodian search for e-mails and text messages would have to be overly inclusive.

14.    RFP 19 asked for "Any documents concerning rules or procedures for testing employees for COVID-19, whether at the deployment or after the employee "demobilized" – voluntarily or involuntarily."

2

33844231v.1

15.     Defendants explained that COVID-19 testing was not generally available during Plaintiffs' short time in New York and, if available, was limited to patients admitted to a hospital who exhibited COVID-19 symptoms.  Therefore, there are no documents concerning rules or procedures for testing employees during the timeframe of Plaintiffs' employment.

16.     Defendants indicated that no documents from the relevant timeframe were withheld.  Defendants objected to producing documents related to deployments outside of New York, such as in Louisiana and Texas. Defendants estimated that it would take approximately 15 hours of administrative labor to search for and produce potentially responsive documents because, again, there is not a single document addressing "rules or procedures for testing employees for COVID-19," but there are numerous e-mails addressing case-by-case and employee-specific needs for COVID-19 testing.

17.     RFP 28 asked for "Documents concerning or relating to any nurse complaint about (a) lack of PPE; or (b) working outside of the scope of expertise." And RFP 29 asked for "Documents of Krucial's response to the complaints requested in ¶ 27, including but not limited to reassignment to a station where the nurse felt qualified to work, an attempt to procure PPE, or demobilization of the complaining employee."

18.     Defendants previously produced all documents concerning any of the Plaintiffs' complaints regarding PPE or scope of practice.

19.     Defendants objected to producing documents concerning complaints from other nurses because Krucial estimated that it would take 40 hours of administrative labor to search for and produce potentially responsive documents.  Krucial instructed its travel nurses to report to Krucial if they were asked by the hospital to work without PPE, and numerous Krucial employees worked around the clock to respond to these notifications.  Krucial employees worked to find the PPE or, alternatively, arrange transportation to pick up nurses from the hospital who did not have adequate PPE.  Additionally, many Krucial employees worked to assign shifts to nurses who wanted to work in certain specialties, to the extent that was possible with NYCH&H's available staffing requests.  Krucial worked to respond to concerns and re-assign shifts wherever possible, as indicated in Plaintiffs' Complaint.  RFP 28 is burdensome because it calls for the review and production of every communication generated by multiple administrative employees who were specifically tasked with responding to requests for PPE and particular shift assignments.

20.     RFP No. 38 asked for "All communications among members about the finances of Krucial."

21.     Defendants responded that the LLC members of Krucial are entities and, thus, not capable of communications.  To the extent Plaintiffs seek communications among the individuals who directly or indirectly own membership units in these entities, Defendants objected because it would be inappropriately burdensome to disclose highly confidential and sensitive business information; it would also take many, many hours to identify responsive e-mails and text messages regarding Krucial's finances.

3

22.     In my personal capacity and as a corporate representative of Krucial Staffing, LLC, and based on information currently available, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of February, 2021, in Overland Park, Kansas.

_CEU/RN._

Brian Cleary