L32KALLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ALEXIS ALLEN, et al.,

         Plaintiffs,

    v.                   20 CV 2859 (JGK)(OTW)
                           Remote Conference

KRUCIAL STAFFING, LLC, et al.,

         Defendants.

------------------------------x

                          New York, N.Y.
                          March 2, 2021
                          3:05 p.m.

Before:

              HON. ONA T. WANG,

                          Magistrate Judge

               APPEARANCES

GREGORY S. ANTOLLINO
    Attorney for Plaintiffs

LATHROP GPM LLP
    Attorneys for Defendants
BY:  KATE GASPER
    MICHAEL J. ABRAMS

1        (The Court and all parties appearing telephonically)
2        (Case called)
3        MR. ANTOLLINO:  Greg Antollino, for the plaintiffs.
4   Good afternoon, your Honor.
5        MS. GASPER:  Kate Gasper and Mike Abrams for the
6   defendants.
7        THE COURT:  All right.  Good afternoon, everyone.
8        We are here for a status and discovery conference in
9   this matter.  We are proceeding by telephone due to the
10  COVID-19 pandemic.  This is a public line and should be treated
11  like my virtual courtroom, and, indeed, I have conferences
12  lined up for this afternoon who will be dialing in.  I expect
13  the same decorum on the line that I expect in my courtroom.
14  Because this is a public line, we should all expect that
15  members of the press or public may be on the line on a
16  listen-only basis.
17       We do have Mr. Walker present as the court reporter.
18  Any other recording or rebroadcasting by anyone else on this
19  line is strictly prohibited.  For a clearer transcript, please
20  stay on mute when you're not talking; please say your name when
21  you start speaking; please don't interrupt each other.
22       I wanted to also add that I encourage any junior, or
23  less experienced, attorneys to speak as there is no limit on
24  the number of attorneys who can speak at the conference.
25       We started this conference in a little unorthodox

way — I entered an order that addressed most of the discovery disputes that were before me, and then put you in a conference room specifically to discuss ways to narrow the requests 19 and on 43.

So, I think without any sort of additional preliminaries, since I think we all heard and understand the issues here, I'd like to hear a report; I guess we'll start with Mr. Antollino. Why don't you give me a little report on requests 19 and 43 and if you've agreed on any limitations to that request.

MR. ANTOLLINO: We have, in part. Ms. Gasper pointed out that my demand referred to the New York deployment in 2020. And she agreed to provide documents, if any, or state that there are none. But I followed up with that there's been another New York deployment, so I would like to know if the policies have changed. And the reason I would want that is to know whether there were other measures put into place at a later time. And one of their objections was that not enough was known about COVID-19 in March 2020, and if there were other measures put into place that addressed this demand in, say, like a month, I could fairly come back and make the argument not that necessarily it would be admissible but it could be an argument, well, why couldn't you do that earlier.

Did you follow me? That was kind of long-winded.

THE COURT: Yes, I did. I was wondering whether this

1  only relates to Request No. 19, or does this also relate to
2  Request No. 43?  This is only 19, right?
3          MR. ANTOLLINO:  Yes, only 9.
4          THE COURT:  Okay.  Can you give me the time period for
5  what you all understand for the New York deployment -- you
6  mentioned two New York deployments.  I guess I'm trying to
7  understand what those time frames are.
8          MR. ANTOLLINO:  Go ahead.
9          MS. GASPER:  So, the request was for all records
10 unless otherwise indicated for the New York deployment starting
11 in March 2020, and that deployment went from March through the
12 beginning of July.  And then Krucial just recently came back, I
13 believe, in the last couple weeks, last three weeks or so, in
14 2021.  So, I think we've reached an agreement to respond to the
15 request as indicated -- rather, without really even limiting
16 it, I think Mr. Antollino is interested in expanding the
17 request, to which we would disagree but he is entitled to do
18 that.
19         MR. ANTOLLINO:  Well, the reason --
20         THE COURT:  Okay, stop.  You're not going to argue in
21 front of me.
22         MR. ANTOLLINO:  I'm not going to argue, I'm not going
23 to argue.
24         THE COURT:  You are going to argue in front of me.
25 You are going to be quiet, and I am going to remind you again,

1   when you speak, please say your name so the transcript is
2   clear.  Okay?
3           MR. ANTOLLINO:  Fair enough.
4           THE COURT:  So, the New York deployment time period is
5   March to July 2020, the first deployment; is that right?
6           MS. GASPER:  Yes.
7           THE COURT:  Okay.  And defendants have agreed to
8   produce responsive docs, responsive to Request No. 19 during
9   that time period in New York; is that right?
10          MS. GASPER:  That's correct.
11          THE COURT:  Okay.  So, why don't we leave it at that.
12          Mr. Antollino, I'm not sure how documents related to
13  testing in 2021, in February of 2021, would have any bearing on
14  what was available back almost a year ago.  And I am not sure
15  how that's relevant.
16          MR. ANTOLLINO:  This is Greg Antollino.
17          I accept your point, Judge.  And when I get a
18  production from this, based on the representation just made,
19  maybe I'll be able to follow it up, but it indicated that there
20  were 15 hours in which this would take to look for, and I
21  originally limited it to the New York deployment and now I'm to
22  understand there are very few documents, if any.
23          But I don't want to argue.  There has been some
24  compromise, and I'll see what I get, and if it's appropriate,
25  I'll follow up with first Ms. Gasper, and if I think it's

necessary, I'll bring it to the attention of the Court.

THE COURT:  Yes.  I think I would caution you that you need to also not only decide if you think it's necessary but make a reasonable good-faith effort to meet and confer and agree, and be mindful of the strictures of Rule 37(a)(5).  Okay?

MR. ANTOLLINO:  Yes.

THE COURT:  All right.  So, Request No. 19 is taken care of.

What about Request No. 43?

MR. ANTOLLINO:  We were -- Ms. Gasper wanted to know what my definition of "statement" was, and I said any written statement.  She said that would be too broad.  And we were in the middle of perhaps negotiating subject matter for the statement to narrow down the request, and our 15 minutes ran out.

THE COURT:  All right.  So, I had a separate question because I had a question about occurrences.  So, maybe, Ms. Gasper or Mr. Abrams, if you can tell us what the nature of your objection is and then maybe we'll turn it back to Mr. Antollino to explain to me what you are looking for in Request No. 43.  Okay?  Go ahead, defense counsel.

MS. GASPER:  Sure, Judge.  This is Kate Gasper.

Our concern is twofold:  Number one is what a statement is.  In my mind, a statement is sort of a written

1  report that's more formalized where you ask an individual to
2  kind of record down their recollection of an incident or
3  something.  In my mind, I don't think of a typical text
4  messaging or emails that sort of describe events for whatever
5  purpose in realtime, I don't consider those statements.  But
6  the request wasn't totally clear.
7          Regardless of how you interpret it, there are many
8  occurrences alleged in the 50 pages, or nearly 50 pages, of the
9  complaint, some of them that are not necessarily related to the
10 claims but are sort of thrown in there for added color here and
11 there.  So, it's a very broad request, depending on how it's
12 interpreted, and that's why we objected.
13         But I will say that there was at least, I believe, one
14 formal statement relating to one of the incidents involving one
15 of the plaintiffs that we produced.
16         THE COURT:  Okay.
17         Before I ask Mr. Antollino to respond, I think what
18 Ms. Gasper just finished with leads into my concern, which is
19 understanding what you mean be by incidents and occurrences.
20 For example, one of my questions is, if there's a statement
21 that says something generally about the state of the pandemic
22 back in March 2020, that could be interpreted or read to be an
23 occurrence.  And I am sure that's not what you were looking
24 for, Mr. Antollino, but it also sounds like if there is at
25 least one formal witness statement for one incident, that there

1   is at least one incident that you do agree on.
2          So I guess, Mr. Antollino, when I turn it over to you,
3   I'd like to know what the parties mean by the one incident
4   you're talking about, and then talk to me about whether
5   Request No. 43 is about other incidents similar to that
6   incident or whether you're talking about any factual assertion
7   in the complaint or whether it's something narrower than that.
8          Okay, thanks.  I'll go on mute now.
9          MR. ANTOLLINO:  Is it my turn?
10         THE COURT:  It is.
11         MR. ANTOLLINO:  All right.  Thank you, Judge.
12         We were just about to -- or I had proposed, and we
13  hadn't finished the discussion — although it didn't seem like
14  we were going to reach an agreement — that I could limit it.
15  If she thinks that certain things in the complaint were added
16  for color, such as -- I won't even go into it, but I would
17  include those things that bear directly on the causes of action
18  and --
19         THE COURT:  Okay, Mr. Antollino, Mr. Antollino, I have
20  a 3:30 that I understand --
21         MR. ANTOLLINO:  I'm sorry.
22         THE COURT:  -- already dialed into and is waiting.
23  The first question I asked you — we're going to break it down,
24  I can treat it like a deposition — what is the one incident
25  that it seems like the two of you agree on?

MR. ANTOLLINO:  I don't know, I honestly don't know.  I'm sorry I didn't answer that.

MS. GASPER:  Judge, I can respond.  This is Kate.

THE COURT:  Okay.  You're talking about a witness statement that you already produced to Mr. Antollino, so I thought that there was agreement.

MS. GASPER:  Yes, I mean — maybe he's not familiar with it — one of the plaintiffs had made a formal complaint to an HR representative, and that complaint was documented in a statement.  That's the only formalized witness statement I believe we have that's related to any of the plaintiffs.

MR. ANTOLLINO:  All right.  I know what she's talking about now.  If there are no third-party statements or no other statements, then, if she would so state, that would be sufficient.

THE COURT:  I think she just stated that on the record --

MR. ANTOLLINO:  Okay.

THE COURT:  -- in open court, and you're going to have a transcript.

MR. ANTOLLINO:  Good enough.

THE COURT:  All right.

So, I think that should take care of the outstanding issues right now.  I think what I'm going to do is: We will adjourn at this point.  I know that there are some potential

L32KALLC

1 issues percolating, so what I'm going to do is put you on for
2 another status conference in about a month.  So, we are going
3 to go off the record now, and my deputy will schedule you for
4 the next conference now.  And then as soon as that is done, you
5 can ring off and we'll proceed on with our 3:30.
6         MR. ANTOLLINO:  Thank you, Judge.
7         THE COURT:  Go okay.  All right.  Thank you very much.
8 We are adjourned.
9         * * *
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25