ANTOLLINO PLLC, GREGORY ANTOLLINO, ESQ., PRINCIPAL
116 WEST 23RD STREET, STE. 500, NEW YORK, NY 10011
PH: 212-334-7397  CELL: 212-979-6899  GREGORY@ANTOLLINO.COM

November 22, 2021

Ona T. Wang
United States Magistrate Judge
500 Pearl Street
New York, NY 10007

RE: Allen, et al. v. Krucial Staffing, LLC et al., 20-cv-2859(JGK)(OTW)

Dear Magistrate Wang:

I sorely disagree with the characterization of my communications to you in your recent order.[1] You indicated that I could communicate with Chambers by email at a settlement conference and suggested a way I might do it, and I thought I had. I am trying to assist you in settling the case by providing my clients' points of view. I had three clients available to speak to you from Texas, Alabama, and Florida, respectively. Another, Nancy Torres, was available from Portugal while

---

[1]    If you believe you have been "insulted" by my communications, I cannot respond because you give no particulars. If you give them, I will explain or apologize if I can understand your point of view. However, you have insulted me throughout this litigation. The most significant insult was when you **spoon-fed** defense counsel a New York Disciplinary Rule for my alleged attempt to influence a New York jury pool – as if I were giving a press conference or something. As I explained to you, however, you admitted that you misunderstood my aim. My aim was not to extract a settlement – though if it resulted in that, then so be it. My reason for declassifying documents was twofold.

    First, the defendants' so-called *Daubert* motion needed to be put into context using documents deemed "confidential" for now. Second, these communications are with public officials; they should not be confidential in the first place. The public should know how Krucial Staffing got this thirty-million-dollar deployment. Indeed, the City officials who hired Krucial are contractually required to indemnify the defendants for precisely the causes of action these plaintiffs seek redress. But they refuse to implead the indemnitors. At the very first conference, in this case, you suggested that I should have brought the City into the litigation initially. A year and a half later, you then suggest that to seek to do so would violate a disciplinary rule.

    I thought that was not only insulting but reflected a complete misunderstanding of the case, not to mention an about-face as to your assessment as to my strategy in 2020. Significantly, at the first in-person conference in September, I asked whether you would keep confidential communications with public officials (or those persons' names) hidden. Before you answered, defense counsel immediately suggested we engage in pre-settlement discussions, and the question remained unanswered. I thought we would get somewhere at that point, but it was another monkey wrench that the defense threw into their litigation strategy and look where we are now. I had to ask you to spit out to tell me the defendants' initial offer, which you said was far off your suggestion. You wanted me to put this on ECF according to your order, so that is why I have filed this statement publicly. I'm sure you'll attack me for saying this as well. I must. I do not think you are competent to handle this case. You have made this a battle between you and me when it is about Justice. Justice would include a potential resolution of the case, but I believe you have thwarted that possibility. I hope I'm wrong.

working as a COVID-response nurse on a cruise ship. She was willing to speak to you, but there was not enough time on the day we appeared in Court.

As you know, two of my clients spoke via Zoom to the Manhattan District Attorney about this deployment. I don't know why but I just looked at the Notices of Claim I filed to bring in the City of New York (or one of its agencies). There is still time to bring in an indemnitor, but it runs out (with tolling) in early 2022.

I have never suggested a Judge or Magistrate of this Court recuse itself. I have floated the idea because I believe orders such as the one you just filed are antagonistic toward me for reasons I cannot fathom understanding. Your physician husband's experience appears to influence your knowledge of this case. I do not think a judge should apply second-hand expertise to my clients' situations. Each of Jalen Eaton (who will be in New York this weekend) and Aimée Branch expressed mystification by what you said to them. (I invited a client of mine (Gary Capers) to Court one day, and he told me he felt treated rudely by your staff.) Perhaps I should not have invited a non-party to a plenary settlement conference, but you did not even introduce any other person in the courtroom that day to me. In retrospect, it doesn't matter; I know I tried my best,d by the end of the day, I felt exhausted.

I do not believe you have compassion for my clients' cases (intertwined and overlapping in causes of action). Each of my clients is disappointed with the progress of this case. Like me, they are insulted by many of your interpretations of the facts and their causes of action. I get emails from Jose Pinlac (whose name you could not even pronounce) every day. You have invoked your Asian heritage (and your husband) more than once for reasons I cannot understand. I have tried to respond in kind to engage you in a discussion. I do not believe my varied attempts are irrelevant or inappropriate. The practice of law is an art, not a science. Empathy comes from within. A judicial officer should have compassion, and I do not think you empathize with my clients. I have tried everything I know to convince you not to attack me in these proceedings, and you continue to do so. These attacks are similar to the lack of empathy you showed my mentally challenged client in the Hidalgo v. City of New York case, where he ran out of the room crying as you sat there impassively. I don't think you believed him, but there was a witness who confirmed his testimony.

I have twenty-eight years of experience in this Court and am close to engaging co-counsel from Alabama for this trial if need be. I have criticized your management of the case in private because I have put my heart into this case, and I am ready to go if we cannot settle. At an earlier "pre-settlement" conference, you mentioned that you had a "teaching schedule" at what I understand is called "Judge School." Settlement was a subject of this "Teaching Schedule," as you indicated. I have had many good judges settle cases in this and other courts. You, however, have acknowledged your failure in your disappointment with the defendants' initial offer. I am helping as best I can, based on how I have seen other judges settle cases. I also have a certificate in Mediation from Harvard, so the subject of settlement is not new to me in study or practice.

The pandemic has been brutal on me for reasons that I have explained to you. To further this explanation, I "came out" as one who suffers from Attention Deficit Disorder. The literature supports (anecdotal and circumstantial) evidence that those with ADD or ADHD (I have the

former) have suffered from the lockdown.[2] One reason for this is that I (and others) feel trapped under a desktop and cannot function at work and home at the same time.[3] However, I just got an actual office in Manhattan, and that's a right move for me when many say they would instead work from home. I'm trying my best and ask that you do the same as is my right (and duty). I represent seven clients, each of whom reported sub-standard patient care during the pandemic. Krucial Staffing then promptly "demobilized" each of them. One – because of lax social-distancing protocols – got COVID-19 unknowingly, then spread it to her daughter. The daughter was traumatized by the experience. As you heard, Ms. Branch told you her child does not want her mother to attend travel assignments because she fears her mother will die.

I respect the bench and have rarely had contentious relationships with judges or magistrates. It has happened, but it is my clients' right to have a judge who understands the facts of their case and causes of action.

Sincerely,

/s/

*Greg S. Antollino*

Gregory Antollino

Cc:     Jason Baxter
          Kate Gasper O'Hara
          Michael Abrams
          Vicki Slater (by email Vicki@vickislater.com)

---

[2] See https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8568596/
[3] I also explained that (seemingly out of nowhere) I lost fifty pounds during this pandemic. I realize now this is manna from heaven, but I must tailor a new wardrobe to a new weight. This takes time and money. I never lost my sense of smell, though, so I thought for a period that I was wasting and had cancer (or worse). Forgive me for being human.