UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Alexis Allen, et al.,<br><br>      Plaintiffs,<br><br>v.<br><br>Krucial Staffing, LLC, et al.<br><br>      Defendants. | Case No. 20-CV-2859 (JGK)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Dated: July 21, 2023

                                        Respectfully submitted,

                                        LATHROP GPM LLP

                                        /s/ *Michael J. Abrams*
                                        Nancy Sher Cohen (NY Bar No. 4160479)
                                        2049 Century Park East, Suite 3500S
                                        Los Angeles, California 90067
                                        (310) 789-4600 / (310) 789-4601 FAX
                                        Nancy.Cohen@LathropGPM.com

                                        and

                                        Michael J. Abrams (*pro hac vice admitted*)
                                        Kate O'Hara Gasper (*pro hac vice admitted*)
                                        2345 Grand Boulevard, Suite 2200
                                        Kansas City, Missouri 64108-2618
                                        (816) 292-2000 / (816) 292-2001 FAX
                                        Michael.Abrams@LathropGPM.com
                                        Kate.Gasper@LathropGPM.com

                                        ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................................ 1

STATEMENT OF FACTS ............................................................................................................. 2

    A.    Background Information on Plaintiff Brandon Burr ............................................... 2

    B.    Brandon Burr's Brief Employment with Krucial Staffing ..................................... 2

    C.    Plaintiff Burr's Alleged Damages .......................................................................... 4

LEGAL STANDARD ..................................................................................................................... 5

ARGUMENT .................................................................................................................................. 5

    A.    The Court Should Enter Summary Judgment Limiting the Potential Recovery of Damages on Counts I and II of the Second Amended Complaint ................................................................................................................ 5

    B.    The Court Should Enter Summary Judgment on Count V – Fraud ........................ 7

    C.    The Court Should Enter Summary Judgment on Count VI – Conversion.............. 9

    D.    The Court Should Enter Summary Judgment on Count VII – Defamation .......... 11

    E.    The Court Should Enter Summary Judgment on Count IX – Wage Theft ........... 13

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aronson v. Wiersma*,
  65 N.Y.2d 592, 493 N.Y.S.2d, 483 N.E.2d 1138 (1985) ........................................................ 12

*Brower v. Nydic, Inc.*,
  1 F. Supp. 2d 325 (S.D.N.Y. 1998) ......................................................................................... 6

*Brown v. Eli Lilly & Co.*,
  654 F.3d 347 (2d Cir. 2011) .................................................................................................... 5

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................................ 5

*Crigger v. Fahnestock & Co.*,
  443 F.3d 230 (2d Cir. 2006) ................................................................................................ 8, 9

*Firefly Equities LLC v. Ultimate Combustion Co.*,
  No. 10 CIV. 1868 JSR, 2010 WL 5174358 (S.D.N.Y. Dec. 14, 2010) ............................... 6, 7

*Giardini v. Settanni*,
  159 A.D.3d 874, 70 N.Y.S.3d .............................................................................................. 11

*Guobadia v. Irowa*,
  103 F. Supp. 3d 325 (E.D.N.Y. 2015) ..................................................................................... 7

*Johnson v. Xerox Corp.*,
  838 F. Supp. 2d 99 (W.D.N.Y. 2011) ...................................................................................... 5

*Koch v. Greenberg*,
  No. 07CIV.9600BSJDF, 2008 WL 4778813 (S.D.N.Y. Oct. 31, 2008) .................................. 9

*Liberman v. Gelstein*,
  80 N.Y.2d 429, 605 N.E.2d 344 (1992) ................................................................................ 12

*Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*,
  888 F. Supp. 2d 385 (S.D.N.Y. 2012) .............................................................................. 10, 11

*Perlbinder v. Vigilant Ins. Co.*,
  190 A.D.3d 985, 141 N.Y.S.3d 141 (2021) ............................................................................. 7

*Robinson v. Concentra Health Servs., Inc.*,
  781 F.3d 42 (2d Cir. 2015) ...................................................................................................... 5

*Tendler v. Bais Knesses of New Hempstead, Inc.*,
    112 A.D.3d 911, 977 N.Y.S.2d 747 (2013) .............................................................................. 6

*von Kaulbach v. Keoseian*,
    783 F. Supp. 170 (S.D.N.Y. 1992) .......................................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................................................ 5

Local Rule 56.1 ............................................................................................................................... 2

**INTRODUCTION**

Defendant Krucial Staffing, LLC ("Krucial") is a staffing company that specializes in quickly mobilizing trained professions in disaster zones. *See* Doc. 42 (Declaration of Brian Cleary). In March 2020, New York City hospitals engaged Krucial to recruit and provide additional medical staff needed to care for the onslaught of critically ill patients suffering from COVID-19. *Id.* Krucial mobilized more than 4,000 medical professionals from around the country to assist with the crisis in New York. *Id.*

This lawsuit was brought by seven former Krucial employees who were initially hired to serve as travel nurses for a 21-day assignment in New York. Krucial offered to pay Registered Nurses $10,000 per week and $13,000 per week for the Nurse Practitioners. Krucial also offered these employees $10,000 in "quarantine pay" to compensate them for the two-week recommended quarantine period following their service in New York. All seven plaintiffs voluntarily left New York or were terminated before the end of their 21-day assignments, and thereafter sued to recoup alleged lost wages. Six of these plaintiffs dismissed their claims against Defendants with prejudice. *See* Doc. 203. Plaintiff Brandon Burr is the only remaining plaintiff, and he stipulated to the voluntary dismissal of Counts III and IV of the Second Amended Complaint. *See* Doc. 213-1. Accordingly, under the operative pleading, only Plaintiff Burr's Count I (*Breach of Contract*), Count II (*Quasi Contract – Reliance on a Promise*), Count V (*Fraud*), Count VI (*Conversion*), Count VII (*Defamation*), and Count IX (*Wage Theft*) remain before the Court.

Defendants respectfully submit their Motion for Partial Summary Judgment and seek judgment in their favor on Counts V, VI, VII, and IX in their entirety. Additionally, Defendants seek a Court order striking Plaintiff Burr's purported claims for emotional distress damages, punitive damages, and attorneys' fees, for which there is no basis for recovery under Counts I and

1

II. As described herein, partial summary judgment in this matter is just and appropriate under the circumstances. There are no disputed material facts preventing judgment as a matter of law in favor of Defendants on Counts V, VI, VII, and IX, and Plaintiff Burr's claims for emotional distress damages, punitive damages, and attorneys' fees are not supported by his claims or allegations under Counts I and II.

## **STATEMENT OF FACTS**

Many of the statements below, which are paraphrased from allegations in the Second Amended Complaint (Doc. 76, hereafter "SAC"), are provided for context and are immaterial to Defendants' Motion for Partial Summary Judgment. However, unless specifically refuted in this Motion, the Court may consider these statements true for the limited purpose of Defendants' Motion. Citations are made to Defendants' Statement of Facts ("SOF"), which is contemporaneously submitted pursuant to Local Rule 56.1, along with parallel citations to the SAC where applicable.

### A.     **Background Information on Plaintiff Brandon Burr**

Plaintiff Burr alleges he is a Board-certified Psychiatric Mental Health Nurse Practitioner and Family Nurse Practitioner in Virginia. (SOF ¶ 7; SAC ¶¶ 35; 219). In particular, Plaintiff Burr operates a telehealth practice that virtually tests, diagnoses, treats patients, and prescribes medication for ADHD and similar psychiatric conditions. (SOF ¶ 8). Although Plaintiff Burr is not a medical doctor and does not hold any doctoral degrees, there are occasions where he refers to himself as "Dr. Burr," and allows his patients to refer to him as "Dr. Burr." (SOF ¶ 9).

### B.     **Brandon Burr's Brief Employment with Krucial Staffing**

Plaintiff Burr began working for Krucial on or about March 21, 2020 and was terminated roughly 11 days later, on or about April 1, 2020. (SOF ¶ 10). Plaintiff Burr alleges Krucial initially assigned him to Elmhurst Hospital in the emergency room. (SOF ¶ 11; SAC ¶ 222). He was at

Elmhurst Hospital for less than a day and did not treat any patients at the hospital; instead, Burr states that he "helped source IV bags, food & drinks for patients." (SOF ¶ 12; SAC ¶ 222). Plaintiff Burr alleges Elmhurst Hospital staff told him he was not welcome to return to the hospital after he gave a video interview with WABC News. (SOF ¶ 13; SAC ¶ 222).

Following his expulsion from the hospital, Plaintiff Burr alleges Krucial's then-CEO, Brian Cleary, asked him to join Krucial's "administrative team." (SOF ¶ 14; SAC ¶ 223). Plaintiff Burr alleges he "spent the next five to ten days, every day, on the phone with different vendors and with family and friends connecting with people that could send PPE, food, uniforms, shoes, and foot scanners to the hotel" where Krucial nurses stayed in New York. (SOF ¶ 15; SAC ¶ 224). The "foot scanners" referred to in the SAC are footwear-sanitizing units sold by PathO3gen Solutions that kill pathogens, including the COVID-19 virus. (SOF ¶ 16). Burr alleges he delivered pizzas for the Krucial employees and purchased items for them at Costco. (SOF ¶ 17; SAC ¶¶ 225; 230). Burr alleges that he "had procured the material and the donating vendors expected him to dole out the equipment as he deemed fit." (SOF ¶ 18; SAC ¶ 227). Burr alleges he "handed out everything like a Santa Claus." (SOF ¶ 19; SAC ¶ 227).

Plaintiff Burr alleges he was terminated for "making [Cleary] look bad" while procuring supplies and soliciting donations. (SOF ¶ 19; SAC ¶ 233). On or about April 1, 2020, Defendant Cleary sent an e-mail and text message alert to all Krucial staffers in New York that "I had to terminate Brandon Burr for many reasons . . ." (SOF ¶ 42). Upon his termination, Plaintiff Burr attempted to take the donated foot scanners with him, and a Krucial nurse prevented him from doing so by hiding them in the hotel kitchen. (SOF ¶ 21; SAC ¶¶ 234-235).

Plaintiff Burr's individual allegations in the SAC are dissimilar from the other plaintiffs; he was the only one who was tasked with a logistical support role. Unlike the other plaintiffs in

3

this suit, Plaintiff Burr never alleged that Krucial asked him to serve in a capacity that was outside his nursing competency or scope of practice (SOF ¶ 22); Burr never alleged that he was forced to leave the 21-day assignment because of a lack of PPE (SOF ¶ 23); Burr never alleged that he contracted COVID-19 because of Krucial (SOF ¶ 24); and, finally, Burr did not join in Count VIII of the Second Amended Complaint (SOF ¶ 25), wherein several other plaintiffs alleged the Intentional Tort Causing Mental and Physical Pain and Suffering. *See generally*, SAC.

### C. Plaintiff Burr's Alleged Damages

Plaintiff Burr identified his alleged damages as the "[l]ost wages from the date of [his] termination and the time the contract would have expired;" compensatory damages for emotional distress and pain and suffering; punitive damages; attorney's fees; court costs; and "the cost of the four scanners that [he] procured," estimated at $40,000. (SOF ¶ 26). Plaintiff Burr alleges that he contracted with Krucial for a 21-day period and, as a nurse practitioner, was offered $13,000 per week. (SOF ¶ 27; SAC ¶¶ 12; 218). Krucial's payroll records indicate that Plaintiff Burr was paid for two full weeks, even though he was terminated on or about April 1, 2020. (SOF ¶ 28). Indeed, including additional overtime, he received $31,473.50 for less than two weeks of work, and an additional $10,000 to compensate him for the 2-week quarantine period; Plaintiff Burr received total gross earnings of $41,473.50, and an additional $1,064.00 in per diems. (SOF ¶ 29). On April 13, 2020, Plaintiff Burr e-mailed Krucial's payroll department and asked, "May I please be paid for the 21 days I was contracted for [?]" and the payroll department did not respond. (SOF ¶ 30). Had Plaintiff Burr remained employed until April 11, 2020 and been paid the weekly rate paid to Nurse Practitioners, he would have earned approximately $13,000 more. (SOF ¶ 31). Although not identified as a category of damages, Plaintiff Burr claims that he incurred $1,696.00 in unreimbursed expenses. (SOF ¶ 32).

4

**LEGAL STANDARD**

Summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

If the moving party meets its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358.

**ARGUMENT**

**A.     The Court Should Enter Summary Judgment Limiting the Potential Recovery of Damages on Counts I and II of the Second Amended Complaint.**

Counts I and II pertain to allegations that Krucial and Plaintiff Burr formed an employment contract and that Krucial breached the contract. (SAC ¶¶ 260-264). Defendants maintain that Plaintiff Burr was fired for cause, though no cause was necessary because he was an at-will employee. Defendants acknowledge that material facts remain in dispute as to Plaintiff Burr's claims regarding his alleged employment contract. However, to help narrow the issues relevant for trial, Defendants seek a court order limiting Plaintiff's potential damages to the "[l]ost wages between the date of [his] termination and the time the [alleged] contract would have expired," as

identified in Burr's Initial Disclosures. (SOF ¶ 49). The alleged contract was only 21-days and Burr was paid for 14 days of employment. (SOF ¶¶ 27-29). Thus, the potential lost wages on Burr's breach of contract claim are only $13,000. (SOF ¶ 31). As explained below, Defendants are entitled to judgment as a matter of law on all of Plaintiff Burr's tort claims. As to the remaining contract and quasi-contract claims, Defendants seek a court order striking Burr's purported claim for "compensatory damages for emotional distress and pain and suffering and other intangible losses," punitive damages, and attorneys' fees, which are not properly recoverable.

"The damages payable for breach of an employment contract are measured, prima facie, by the wages that would have been paid during the remainder of the contract term." *Tendler v. Bais Knesses of New Hempstead, Inc.*, 112 A.D.3d 911, 911, 977 N.Y.S.2d 747, 748 (2013). Further, an "award of punitive damages typically may not be sought in an action for breach of contract arising from an employment relationship," and in "order to support a claim for punitive damages in this situation, the "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature . . . (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *See Brower v. Nydic, Inc.*, 1 F. Supp. 2d 325, 326 (S.D.N.Y. 1998) (citation omitted). Again, Plaintiff Burr's unsupported allegations do not support a finding that Defendants' conduct constitutes an independent tort: Plaintiff Burr's fraud, conversion, defamation, and wage theft claims all fail as a matter of law. Moreover, even if all of the allegations in the SAC are considered true for the limited purpose of Defendants' Motion, these allegations do not state a "pattern directed at the public generally." *See id*. "[A]ttorney's fees are ordinarily available only where specifically authorized by statute or where the parties are subject to an agreement providing for the shifting of attorney's fees in the event litigation should arise with respect to that agreement." *Firefly Equities*

*LLC v. Ultimate Combustion Co.*, No. 10 CIV. 1868 JSR, 2010 WL 5174358, at *6 (S.D.N.Y. Dec. 14, 2010) (citation omitted). Plaintiff Burr does not and cannot claim that the alleged employment contract contains a fee shifting provision and, therefore, his claim for attorneys' fees is appropriately stricken. *See id.* (granting motion for partial summary judgment and holding that punitive damages and attorneys' fees are "unavailable in this action as a matter of law"). Finally, "[a] breach of a contractual duty does not create a right of recovery for damages for emotional distress." *Perlbinder v. Vigilant Ins. Co.*, 190 A.D.3d 985, 141 N.Y.S.3d 141, 147 (2021).

In Count II, Plaintiff Burr asserts a claim for "Quasi-Contract – Reliance on a Promise." Under New York law, "the proper measure of damages to a plaintiff who alleges detrimental reliance is the value of plaintiff's performance," and the plaintiff can "recover the fair and reasonable value of the performance rendered, regardless of the enforceability of the original agreement." *See von Kaulbach v. Keoseian*, 783 F. Supp. 170, 178 (S.D.N.Y. 1992). Plaintiff Burr did not disclose any purported damages from hours allegedly worked for Krucial for which he was not paid. (SOF ¶ 33). This is not surprising, as Plaintiff Burr was paid for several days following his termination. (SOF ¶ 28). However, Plaintiff Burr identified his allegedly unreimbursed expenses as $1,696.00, specifically $960.00 for "gas, parking, taxi, tolls, etc.", $704.00 for food and beverages, and $32.00 at CVS for miscellaneous items. (SOF ¶ 34). Attorneys' fees, punitive damages and emotional distress damages are similarly unavailable for this quasi-contract claim. *See, e.g.*, *Guobadia v. Irowa,* 103 F. Supp. 3d 325, 342 (E.D.N.Y. 2015); *Firefly Equities* 2010 WL 5174358, at *6. Thus, Defendants respectfully seek a court order limiting Plaintiff Burr's potential recovery under Count II to his alleged damages of $1,696.00.

**B.   The Court Should Enter Summary Judgment on Count V – Fraud**

Under New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: "(1) a material misrepresentation or omission of fact (2) made by defendant

7

with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).

In the Second Amended Complaint, the plaintiffs collectively asserted a claim for fraud based on the allegation that Krucial misrepresented to the nurses that "(a) plaintiffs would work in their field of expertise; (b) the plaintiffs would get proper PPE, (c) that there were jobs available that they could perform even if not precisely within their field of expertise." (SAC ¶¶ 294-296). Some plaintiffs alleged that they suffered damages because they felt compelled to quit (or were fired) when there were no available shifts within their nursing scope of practice. *See generally,* SAC.  Other plaintiffs alleged that they suffered damages because they felt compelled to quit (or were fired) when they refused to work at the hospital with limited PPE.  *Id.*  These factual allegations formed the basis of Count V, the fraud claim, in the Second Amended Complaint.[1] However, Plaintiff Burr's individual allegations run contrary to the facts collectively pleaded in Count V.

Significantly, Plaintiff Burr does not allege that he suffered any damages from the alleged lack of PPE or being asked to work outside his nursing scope of practice and expertise. (SOF ¶ 22).  Unlike the other plaintiffs—who have since dismissed their claims—Plaintiff Burr worked in a logistics support role rather than a healthcare clinician.  Plaintiff Burr maintains that he was ready, willing, and able to perform all of this assigned work in New York. *See generally,* SAC. Plaintiff Burr claims that he was fired from Krucial because he made the CEO "look bad" by doing

---

[1] These allegations lack an evidentiary basis and are strongly denied by Defendants. However, the dispute over these plaintiffs' meritless fraud claims is beyond the scope of the pending Motion for Partial Summary Judgment.

his job so well and procuring so much PPE for the Krucial nurses that he was essentially "like Santa Claus".  (SOF ¶¶ 19-20).

When asked to voluntarily dismiss Count V, Plaintiff Burr's counsel explained that Burr's alleged fraud damages were the costs associated with items that Burr purchased at the request of Defendants for which he was never reimbursed.  *See* SAC ¶ 225 ("Several administrators (on-site) asked if Burr would use his car to grocery shop at Costco to pick up vitamins for Krucial staff.  He did that and submitted receipts, but Krucial only reimbursed him for a fraction of the amount he spent.  It was too modest a stiff to complaint about, but an omen for what was to come.")  Among other reasons, Plaintiff Burr's purported fraud claim fails as a matter of law because he did not allege and cannot show that Krucial promised to reimburse him for these expenses while simultaneously intending not to do so.  *See Crigger*, 443 F.3d at 234.

Nevertheless, as an alternative to seeking judgment in their favor on Count V in its entirety, Defendants seek an order limiting Burr's alleged fraud damages to the cost of these purchased items: $1,696.00.  To warrant punitive damages in a fraud action, a defendant must exhibit fraud "aimed at the public generally," evincing a "high degree of moral turpitude," and demonstrating "such wanton dishonesty as to imply a criminal indifference to civil obligations." *See Koch v. Greenberg*, No. 07CIV.9600BSJDF, 2008 WL 4778813, at *5 (S.D.N.Y. Oct. 31, 2008).  Because Plaintiff Burr acknowledges that these allegedly unreimbursed expenses were initially "too modest a stiff to complain about," Defendants seek a court order striking Burr's claim for punitive damages on Count V.  *See* SAC ¶ 225.

        C.     **The Court Should Enter Summary Judgment on Count VI – Conversion**

Simply stated, Plaintiff Burr's claim for conversion fails because he did not have any ownership or possessory rights in the property that was allegedly converted by Defendants.  Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of

9

ownership over goods belonging to another to the exclusion of the owner's rights." *See Pac. M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 396 (S.D.N.Y. 2012) (quotation omitted). This includes a "denial or violation of the plaintiff's dominion, rights, or possession" over her property." *Id.* It also requires that the defendant exclude the owner from exercising her rights over the goods. *Id.* The "[t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id.* "To state a claim of conversion, the plaintiff must allege that (1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another, (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Id.*

When Plaintiff Burr was terminated from Krucial, he attempted to take the pathogen foot scanners with him because, Burr alleges, "[t]hese were in his charge; he was responsible for taking them and maintaining them" and finding another deserving recipient; he claims that "Krucial stole the scanners" from him. (SOF ¶ 35; SAC ¶¶ 234; 235). However, this conclusory allegation is not supported by any evidence. Rather, the pathogen foot sanitizers were gifted to Krucial Staffing by the manufacturer of the scanners, PathO3gen Solutions. (SOF ¶ 37). In his interrogatory responses, Plaintiff Burr identified Scott Beal of PathO3gen Solutions as an "individual[] or businesses whom [he] contacted seeking donations and supplies *on behalf of* Krucial" (emphasis added) (SOF ¶ 36). The acknowledgment that Plaintiff Burr was acting "on behalf of Krucial" in soliciting donations runs contrary to his allegation that he received the foot scanners personally rather than as an agent for Krucial.

Defendants respectfully submit the sworn declaration of Scott Beal, the Chief Operating Officer of PathO3gen Solutions, who testifies that in March 2020, PathO3Gen Solutions donated

10

several shoe sanitizing units to Krucial for use in the hotels where the travel nurses stayed in New York. (SOF ¶ 37). Mr. Beal coordinated with Plaintiff Burr for the delivery and provided him instructions for the operation of the donated units. (SOF ¶ 38). Importantly, Mr. Beal understood that Plaintiff Burr would receive delivery of the donated units on behalf of his employer or organization, and PathO3Gen never intended for Plaintiff to own or take personal possession of the donated units. (SOF ¶¶ 39-40). There is no evidence to support a finding that Plaintiff Burr had a "possessory right or interest" in the foot scanners following his termination from Krucial. *See Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d at 396.

The foot scanners rightfully belong to Krucial and Plaintiff Burr was merely a point person to receive the delivery. Plaintiff Burr's claim for conversion fails because he cannot "show legal ownership or an immediate right of possession" of the items he claimed were converted. *See Giardini v. Settanni*, 159 A.D.3d 874, 875, 70 N.Y.S.3d. Summary judgment on Count VI is appropriate under the circumstances.

### D. The Court Should Enter Summary Judgment on Count VII – Defamation

Plaintiff Burr alleges that Defendant Cleary sent a mass e-mail or text to Krucial staffers telling everyone Burr had been terminated because he was a "scammer." (SOF ¶ 41; SAC ¶ 242). Indeed, the following message was sent via e-mail or text to all Krucial staffers in New York on or about April 1, 2020:

> Hi team, as many of you are aware I had to terminated Brandon Burr for many reasons. I am extremely proud of Krucial's reputation across the country. To that end, I will go to any length, and spare no expense to protect it. If any of you have documentation or communication from him please get it to me. I have plenty from all of the companies with the 'donation scams'. Thanks guys.

(SOF ¶ 42). This statement did not cause damage to his reputation, though, because Plaintiff Burr testified, "It's my opinion that 100 percent of the people that read that text knew that was totally a farce, that was totally a lie." (SOF ¶ 43). Additionally, when asked, Plaintiff Burr could not

11

articulate any specific instances where he suffered harm to his reputation as a result of this communication. (SOF ¶ 44). Rather, he identified only some instances where his friends and colleagues asked him about the statement and invited him to explain. (SOF ¶ 45).

Plaintiff Burr, in response to discovery requests, clarified that he did not have a claim for lost profits to his business and sought only nominal damages as part of a defamation *per se* claim. (SOF ¶ 46; SAC ¶ 312). The four established exceptions to allow defamation *per se* are "(i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman." *See Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 605 N.E.2d 344, 347 (1992).

Plaintiff Burr is a nurse practitioner who operates a virtual telehealth practice diagnosing patients and prescribing medicine for ADD and ADHD. (SOF ¶ 8). This job has nothing to do with obtaining and managing corporate donations. To find that a statement qualifies as one that tends to injure another in his or her trade, business or profession, the statement "must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities." *See Liberman*, 80 N.Y.2d at 436, 590 N.Y.S.2d 857, 605 N.E.2d 344). The statement must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is "of a kind incompatible with the proper conduct of the business, trade, profession or office itself." *See Aronson v. Wiersma*, 65 N.Y.2d 592, 593, 493 N.Y.S.2d 1006, 483 N.E.2d 1138 (1985)).

Again, while briefly employed by Krucial Staffing, Plaintiff Burr worked in a logistical role of procuring supplies and managing donations for the frontline workers of the COVID-19 pandemic. The statement that he was terminated for many reasons and some involving "donation scams" is not sufficiently tied to the specific standards of performance of a nurse practitioner who

diagnoses patients and prescribes them ADHD medication. Summary judgment is appropriate because Plaintiff Burr did not demonstrate any actual damages and does not satisfy the exception for proving defamation *per se*.

### E. The Court Should Enter Summary Judgment on Count IX – Wage Theft

In the Second Amended Complaint, Plaintiff Burr alleges that he was "cheated out of some $10,000 quarantine pay." (SOF ¶ 47; SAC ¶ 332). There is no allegation in the SAC that Plaintiff Burr worked any hours for which he allegedly was not paid. (SOF ¶ 48). When asked to identify his economic damages in his initial disclosures and discovery, Plaintiff Burr only identified the amount purportedly due from the date of his termination until the end of the 21-day contract. (SOF ¶¶ 30; 49). Additionally, when questioned at his deposition, Burr could not dispute Krucial's payroll records. (SOF ¶ 50). These payroll records indicate that Plaintiff Burr received $10,000 in quarantine pay, as part of his total gross earnings of $41,473.50 for working from March 21, 2020 through April 1, 2020. (SOF ¶ 29). There is no evidence to suggest Plaintiff Burr did not receive the money indicated on Krucial's business records. There is no factual basis for a Wage Theft claim and, thus, summary judgment is just and appropriate.

### CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants Krucial Staffing, LLC and Brian Cleary, by and through counsel, hereby pray this Court enter the Order of Partial Summary Judgment as requested above.

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment contains 4,314 words, exclusive of the cover page, signature block, certificate of compliance, table of contents, and table of authorities.  I further certify that Defendants' Memorandum of Law in Support of Motion for Partial Summary Judgment complies with Paragraph 2(D) of the July 6, 2022 version of the Individual Practices of Judge John G. Koeltl.

*/s/ Michael J. Abrams*
An Attorney for Defendants